**KLESTADT & WINTERS, LLP**
570 Seventh Avenue, 17th Floor
New York, NY 10018
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Fred Stevens
Sean C. Southard
Thomas Szaniawski
Maeghan J. McLoughlin

*Counsel to Defendant Xaverian High School*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re                                                      :
                                                           :        Chapter 7
OLANIYI L. AKANMU and OMOLAYO T.                           :
SUARA,                                                     :        Case No. 11-43773 (CEC)
                                                           :
                           Debtors.                        :
-----------------------------------------------------------x
ROBERT L. GELTZER, as Chapter 7 Trustee                    :
of the Estate of Olaniyi L. Akanmu and                     :
Omolayo T. Suara,                                          :
                                                           :
                           Plaintiff,                      :
                                                           :
                -against-                                  :        Adv. Pro. No. 13-01105
                                                           :
XAVERIAN HIGH SCHOOL,                                      :
                                                           :
                           Defendant.                      :
-----------------------------------------------------------x

**MOTION OF DEFENDANT XAVERIAN HIGH SCHOOL FOR AN
ORDER, PURSUANT TO FED. R. CIV. P. 12(b)(6), MADE APPLICABLE
TO THIS PROCEEDING BY FED. R. BANKR. P. 7012, DISMISSING THE
COMPLAINT AND ADVERSARY PROCEEDING WITH PREJUDICE**

**TO THE HONORABLE CARLA E. CRAIG,
CHIEF UNITED STATES BANKRUPTCY JUDGE:**

                Xaverian High School, the defendant in the above-captioned adversary

proceeding ("Xaverian" or the "Defendant"), by its attorneys, Klestadt & Winters, LLP, as and

for its motion (the "<u>Motion</u>"), for an order, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedures (the "<u>Rules</u>"), made applicable to this proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedures (the "<u>Bankruptcy Rules</u>"), dismissing the complaint, dated March 22, 2013 (the "<u>Complaint</u>") [Docket No. 1], of Robert L. Geltzer (the "<u>Trustee</u>" or "<u>Plaintiff</u>"), as chapter 7 trustee of the Estate of Olaniyi L. Akanmu and Omolayo T. Suara (collectively, the "<u>Debtors</u>"), respectfully sets forth and alleges as follows:

<u>**PRELIMINARY STATEMENT**</u>

1.      Xaverian is a parochial high school "rooted in the missionary charism of St. Francis Xavier and consistent with the principles and commitment of the founder of the Xaverian Brothers in America, Theodore Ryken," and is "dedicated to the development of the person through academic excellence, extracurricular involvement, and Christian service to neighbor and community."[1]   The Debtors' son attended high school at Xaverian from 2006 to 2010.   Annual tuition during that period was between $9,250 and $10,100.   The Debtors' son received grant awards from Xaverian equaling nearly half of the tuition due, with the other half paid by the Debtors in monthly installments during the annual billing cycles.   The Trustee is seeking the recovery of the tuition paid to Xaverian by the Debtors on the theory that the Debtors received no benefit or reasonably equivalent value in exchange for the tuition.

2.      As far as Xaverian is able to tell, a bankruptcy trustee has only sued a parochial school for the avoidance of tuition paid by debtors for their minor children's education on three occasions, two of which are in the Debtors' case and the other was in <u>Geltzer v. St. Frances de Chantel School (In re Fitzpatrick)</u>, Adv. Pro. No. 11-2918 (Bankr. S.D.N.Y. Nov. 28,

---

[1]   Taken from Mission Statement of Xaverian High School published at http://www.xaverian.org/.

2011) (Lane, J.) ("St. Frances")[2].   In St. Frances, this Trustee withdrew his complaint with prejudice after the issues presented in this Motion were fully briefed and submitted.   Xaverian does not know the Trustee's reason for withdrawing in *St. Frances*, and then asserting identical causes of action in the instant case.   Regardless, a ruling on these issues is needed.   Interestingly, Xaverian has been unable to find even one other example of a bankruptcy trustee suing on this novel theory, which appears to be an invention of this particular Trustee.[3]

3.      Xaverian seeks the dismissal of the Trustee's Complaint, with prejudice. Simply put, a parent receives value when she pays money for the care and welfare of her children.   Parents have a legal obligation to care for and educate their children, and clearly receive value for any money they spend fulfilling that legal and moral obligation.   There is no practical or appropriate means of challenging the amount spent by a debtor on fulfilling those parental obligations in order to determine "reasonably equivalent value" (*e.g.*, comparing the cost of Catholic school versus a public school, the costs of treating a child at Sloan Kettering versus a local hospital, or the costs of buying food at Whole Foods versus Costco).   Determining to do anything other than adopt a *per se* rule finding that a debtor receives value for money spent caring for their children, would undermine every law, both natural and statutory, requiring parents to care for their children.

4.      It is important to note that Xaverian's position does not unduly deprive a bankruptcy trustee of the ability to avoid fraudulent transfers by debtors to their children.   If the

---

[2]   In the interests of giving appropriate intellectual credit for many of the arguments contained in Xaverian's brief, a number of them came from the submissions made by St. Frances through its counsel, Kelley Drye & Warren LLP, Of Counsel Benjamin D. Feder and Associate Damon W. Suden on the briefs.   Kelley Drye & Warren LLP is also representing the defendant in Geltzer v. Our Lady of Mt. Carmel-St. Benedicta School, Adv. Pro. No. 13-01107 (Bankr. E.D.N.Y.) (Craig, C.J.), which was filed in the same case and contemporaneously with the instant action against Xaverian.   Of course, Xaverian's undersigned counsel has done its own research and review of the applicable authorities and arguments contained herein.
[3]   Other bankruptcy trustees, including the Trustee, have sued colleges to recovery tuition payment made by debtor parents for the education of their adult children.

transfer(s) in question was made with the intent to hinder, delay or defraud the debtors' creditors, it could most certainly be avoided (provided no other defenses exist).  Further, if the transfer(s) in question was made for something other than a legal necessity, the determination of value might be properly submitted to a fact finder.  However, in cases like this one, where a debtor is simply spending money in a manner deemed appropriate by the debtor for legally required educational activities in fulfillment of their parental duties, the debtor should be deemed to have *per se* received reasonably equivalent value.  Accordingly, the Trustee's Complaint should be dismissed with prejudice.

## JURISDICTION

5.     This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and Administrative Order No. 264 titled "In the Matter of The Referral of Matters to the Bankruptcy Judges" of the United States District Court for the Eastern District of New York (Weinstein, C.J.), dated August 28, 1986.

6.     This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (E) and (O).

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1409(a) because this proceeding arises in a case under the Bankruptcy Code pending in this district.

## BACKGROUND

8.     From 2006 to 2010, the Debtors' minor son, Abraham, attended Xaverian High School.  For most of that time, Abraham received grant awards from Xaverian equaling approximately one-half of his tuition, with the Debtors paying a grand total of $21,816 for Abraham's high school education at Xaverian (collectively, the "Tuition Payments").

9.     On March 25, 2011, the Debtors filed a voluntary petition for relief under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States

Bankruptcy Court for the Southern District of New York.  See In re Olaniyi L. Akanmu & Omolayo T. Suara, Case No. 11-11331 (Bankr. S.D.N.Y. Mar. 25, 2011) (Gropper, J.)

10.    On the Debtors' motion, on April 21, 2011, Bankruptcy Judge Allan L. Gropper entered an order transferring the Debtor's case to the Eastern District of New York.

11.    On March 22, 2013, the Trustee filed the Complaint with this Court and commenced the instant adversary proceeding against Xaverian seeking to recover the Tuition Payments from Xaverian on two or three theories:

- The Tuition Payments are avoidable as constructive fraudulent conveyances pursuant to sections 544, 548 and/or 550 of the Bankruptcy Code, and/or section 273, 274 and 275 of the N.Y. Debtor Creditor Law (Counts 1 and 2);

- Xaverian was unjustly enriched by the Tuition Payments (Count 3); and

- Further, although not pleaded as an additional count and without making Abraham a defendant in this action, the Trustee seeks the imposition of a constructive trust against "Debtors' interest in the bank account(s) of Sons [Abraham] and/or [Xaverian]" as an additional remedy within his unjust enrichment claim.

12.    Upon agreement between the Trustee and Xaverian and approved by this Court, the time for Xaverian to answer or otherwise move with respect to the Complaint was extended to May 26, 2013, which was further extended to May 28, 2013 pursuant to Bankruptcy Rule 9006.

## LEGAL AUTHORITY

13.    For all the reasons stated below, the Trustee's claims fail as a matter of law warranting dismissal of the Complaint with prejudice without the need for further pleading, discovery, motion practice or trial.

### I.  Standards for Dismissal Under Rule 12(b)(6)

14.    Rule 12(b)(6) provides, in relevant part, that a complaint should be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P.

12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Twombly, 55 U.S. at 555.  In considering a Rule 12(b)(6) motion, a court accepts as true all material facts alleged in the complaint and draws all reasonable inferences in favor of the plaintiff.  Bolt Elec. Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995).  The motion to dismiss is granted only if no set of facts can be established to entitle the plaintiff to relief.  Walker v. City of New York, 974 F.2d 293, 298 (2d Cir. 1992).

15.  Further, although the court accepts all the factual allegations in the complaint as true in determining such a motion, the court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Papasam v. Allain, 478 U.S. 265, 286 (1986).  Rather, to withstand a motion to dismiss, the "claims must be 'supported by specific and detailed factual allegations'".  Friedl v. City of New York, 210 F.3d 79, 85-86 (2d Cir. 2000) (quoting Flaherty v. Coughlin, 713 F. 2d 10, 13 (2d Cir. 1983)).  Without a doubt such allegations must also be truthful and accurate.  See Blakeman v. The Walt Disney Company, 613 F. Supp. 2d 288, 297 (E.D.N.Y. 2009) (requiring the complaint to be supported by facts consistent with the allegations).

## II.  The Constructive Fraud Claims Must be Dismissed – Claims 1 & 2

16.  As detailed below, in dismantling the Trustee's constructive fraud claims, Xaverian first attempts to interpret the likely intent of the Trustee's pleading notwithstanding that the Complaint appears to miss a major allegation consistent with the Trustee's prior pleadings in St. Frances.  Then, Xaverian establishes that the Debtors had a legal obligation to

educate their son and accordingly, received reasonably equivalent value in exchange for the Tuition Payments. Xaverian only addresses the reasonably equivalent value and/or fair consideration element of a constructive fraud, because it is all that is necessary for purposes of this Motion. Of course, if this matter were to be tried, Xaverian reserves the right to challenge other vital elements of the Trustee's case in chief, including a proof that the Debtor was insolvent during all relevant periods.

### A.  What position is the Trustee attempting to state through the Complaint?

17.    The Trustee certainly does not allege that Xaverian failed to adequately perform in its obligation to provide Abraham with a quality education in exchange for the Tuition Payments it received. Rather, the Trustee asserts that since it was Abraham and not the Debtors that were educated by Xaverian, the Debtors did not receive value on account of the Tuition Payments. As written, the Complaint appears to stand for the proposition that parents do not receive any value on account of the money they spend on their children. However, it is unclear that this is precisely what the Trustee is intending to say.

18.    More likely, the Trustee is trying to say that debtor parents do not receive reasonably equivalent value for money spent on their children only if there is a lower cost option, *i.e.*, the Debtors did not receive reasonably equivalent value in exchange for the Tuition Payments, because they could have sent Abraham to another school for less tuition or for no tuition.

19.    Either way his pleading was intended, the Trustee is just plain wrong. In order to err on the side of caution, Xaverian addresses both possibilities in this Motion.

### B.  Parents Are Legally and Morally Required to Take Care of Their Children

20.    Xaverian's argument necessarily starts by establishing a debtors' requirement to take care of their children, which includes an obligation to see to their children's

education.  Although the notion seems obvious, the Trustee's entire argument is based upon the notion that parents have an option in taking care of their children.  Accordingly, Xaverian starts by debunking the Trustee flawed presumption.

21.    Parents' obligations to their children are generally regulated by state law. Specifically, the United States Constitution leaves it to the state governments to regulate the education of minors.  Wisconsin v. Yoder, 406 U.S. 205, 213 (1972); Board of Ed. Of Cent. Sch. Dist. No. 1 v. Allen, 392 U.S. 236, 246-247 (1968).  There is, however, a compelling national interest in the quality of the education received by minors.  Beginning in 1965, the federal government has provided financial support to the states under various laws to see to it that the quality of the education of minors is sufficient.  See e.g., the creation of the Federal Department of Education in 1867, and the enactment of the Elementary and Secondary Education Act of 1965 and the No Child Left Behind Act of 2001.

22.    It is currently the law in the State of New York that minor children from ages six to sixteen must attend full time instruction of an approved curriculum in a public or private institution, or receive adequate homeschooling.  See New York Edn. Law Section 3205; see also Family Court Act 413 and Domestic Relations Law 240 1-b (imposing an obligation on parents to support their children, including by providing education, through the age of twenty-one (21) if the parent is financially able).

23.    The law in the State of New York clearly imposes a duty upon parents to ensure that their children are in compliance with all educational requirements mandated by the State.  See New York Edn. Law Section 3205.

24.    For good reasons that hardly require any debate, parents are required by law to see that their children are educated.  The payment of tuition to Xaverian was consistent with the Debtors' parental duties, or otherwise well within their parental discretion.

**C.  Parents Have a Fundamental Right to Direct Their Children's Education**

25.    Under the United States Constitution, parents have a fundamental right to direct the education of their children.  In 1925, the Supreme Court recognized that "liberty," protected by the Fourteenth Amendment, includes the right to choose a private education. Confronted with an Oregon statute mandating public school attendance, the Supreme Court ruled the statute unconstitutional.  Pierce v. Society of Sisters of the Holy Names of Jesus and Mary, 268 U.S. 510 (1925).  In *Pierce*, the Supreme Court stated:

> The fundamental theory of liberty upon which all governments in this Union repose excludes any general power of the state to standardize its children by forcing them to accept instruction from public teachers only. The child is not the mere creature of the state; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations.

Id. at 535.

26.    Thus, the Debtors had the fundamental right to direct the education of their minor children.

**D.  The Debtors Received Reasonably Equivalent Value and/or Fair Consideration in Exchange for the Tuition Payments**

27.    Adjudication of claims alleging constructive fraudulent transfer — under either Bankruptcy Code § 548(a)(1)(B) or New York Debtor-Creditor Law § 207 et seq. — requires an analysis of "reasonably equivalent value" ("REV").[4]

---

[4] While the NYDCL utilizes the phrase "fair consideration" rather than "reasonably equivalent value," the terms are regarded as interchangeable.

28.    The REV analysis involves <u>two</u> <u>distinct inquiries</u>: (i) as a threshold matter, a court makes a factual determination of whether a debtor-transferor receives <u>any value at all</u>; and (ii) the court thereafter inquires whether value received by the debtor was "reasonably equivalent" to value conveyed.  <u>See In re Gonzalez</u>, 342 B.R. 165, 172 & n.6 (Bankr. S.D.N.Y. 2006) (Gropper, J.) (citing <u>In re R.M.L., Inc.</u>, 92 F.3d 139, 148-49 (3d Cir. 1996)).  The former inquiry concerns only the nature of consideration received by the debtor — does it have value or not?  <u>See, e.g., Gonzalez</u>, 342 B.R. at 172-73.  It is only the latter inquiry that empirically examines and compares the equivalency of value given and value received; this inquiry is broad, fact-intensive, and requires examination of the "totality of the circumstances."  <u>See, e.g.,</u> <u>Gonzalez</u>, 342 B.R. at 172-73.

29.    A parent's legal obligations to minor children are considered antecedent debts, and the satisfaction of such obligations constitute value for purposes of Code § 548.  <u>Cf.,</u> <u>e.g.</u>, <u>In re Gonzalez</u>, 342 B.R. at 169.  One such obligation is the requirement to provide access to education.

30.    Providing for a minor child to attend a private parochial school indubitably provides value to the parent-payor.  As set forth at length above, the legal obligation to provide education is grounded in state law and attendance at an accredited parochial school like Xaverian satisfies those statutory obligations.  Thus, the value conveyed by the Debtors, (<u>i.e.</u>, the Tuition Payments), is directly supported by value received in the form of satisfaction of education-related legal obligations.

31.    The Trustee confuses matters by equivocally (if not disingenuously) framing the issue.  It is suggested that because there is no legal obligation to send a child to a parochial school *per se*, doing so does not satisfy any legal obligation, and therefore bestows no

value upon the Debtors.  This proposition is both imprecise and misleading; the relevant inquiry is simply whether the aforementioned statutory requirements are satisfied.  Notwithstanding the availability of public school education, attendance at a duly-accredited parochial school plainly satisfies the statue.

32.    The fact that an obligation can be met by less-expensive means does not mean that the obligor receives no value.  Arguing that a tuition-paying parent receives no value conflates (i) quantifying and comparing equivalency of value, with (ii) the separate determination of whether <u>any</u> <u>measure</u> <u>of value</u> was received in the first instance.  <u>See</u> <u>In re</u> <u>R.M.L., Inc.</u>, 92 F.3d 139, 148-50 (3d Cir. 1996) (establishing the presence/absence of threshold value is independent of quantifying value and examining equivalency; failure to recognize the distinction is legal error).

33.    If a parent indulges his children with a meal at a five-star restaurant and accommodations at a luxury hotel, that parent receives value by satisfying his legal duty of care — the children are protected from the elements and do not go to bed hungry.  Suggesting that this situation presents no value, based upon availability of less-expensive alternatives, is to argue equivalency rather than threshold value.  <u>See</u> <u>In re Chomakos,</u> 69 F.3d 769, 772 (6th Cir. 1995), <u>and</u> <u>In re Chomakos</u> (lower court opinion), 170 B.R. 585, 595 (Bankr. E.D. Mich. 1993).

34.    The Trustee's rationale further misstates the law by contending that a debtor cannot receive value by conferring a benefit upon a third-party.  The Trustee argues that the substantive benefits of education benefit only the minor child, and concludes that no benefit or value was received by the Debtors.

35.    Although a transfer for the <u>exclusive</u> benefit of a third-party provides no value to the debtor, "[t]he fact that the consideration initially goes to third parties may be

disregarded to the extent that the debtor indirectly receives a benefit from the entire transaction."

HBE Leasing Corp. v. Frank, 48 F.3d 623, 638 (2d Cir. 1995) (citing Rubin v. Manufacturers

Hanover Trust Co., 661 F.2d 979, 991-92 (2d Cir. 1981)).  See also In re Young, 82 F.3d 1407,

1415 (8th Cir. 1996), cert. granted, judgment vacated sub nom. Christians v. Crystal Evangelical

Free Church, 521 U.S. 1114 (1997) (value includes not only direct benefits, but also indirect

benefits).  However, in order to constitute value, an indirect benefit must be "fairly concrete."

Gonzalez, 342 B.R. at 174 (citing In re Minnesota Util. Contracting, Inc., 110 B.R. 414, 420 (D.

Minn. 1990) (collecting cases).

      36.    Importantly, value is not limited to consideration that constitutes

"marketable financial value or economic utility" that can be liquidated for the benefit of

creditors.  Young, 82 F.3d at 1415.  See also R.M.L., 92 F.3d at 149-51 (rejecting notion that

"debtor must receive a direct, tangible economic benefit in order to receive 'value'"); In re

Fairchild Aircraft Corp., 6 F.3d 1119, 1125-26 (5th Cir.1993) (although minimum quantum of

"value" is nebulous, dollar-for-dollar economic equivalency is not required for REV).

Conversely, a debtor does not receive REV when the consideration received falls "so far short of

the real value of the [conveyed] property as to startle a correct mind, or shock the moral sense."

In re Dondi Fin. Corp., 119 B.R. 106, 109 (Bankr. N.D. Tex. 1990), cited approvingly by

Gonzalez, 342 B.R. at 173.

      37.    In HBE Leasing Corp. v. Frank, 48 F.3d 623 (2d Cir. 1995), the Second

Circuit distilled the indirect-benefit analysis, and applied it to a situation involving substantial

indirect and intangible value.  See HBE, 48 F.3d at 638 (citing Rubin, 661 F.2d at 991-92).  The

HBE debtor paid substantial legal fees on behalf of seven co-defendants in RICO-related

litigation.  48 F.3d at 629-30.  The Second Circuit found that the debtor received substantial

indirect and intangible value, which derived from putting on a joint defense based upon the defendants' substantially overlapping interests. <u>See</u> 48 F.3d at 638-39. The resulting tactical advantages benefitted each defendant, but were indivisible among defendants individually and could not be quantified incrementally. <u>See</u> 48 F.3d at 639. Among other things, the Second Circuit concluded that intangible and collectively-shared benefits presented a situation where the "quantitative analysis" normally required under <u>Rubin</u> was inappropriate…." <u>HBE</u>, 48 F.3d at 639.

        38.    As for intangibles generally, love, affection, and other purely-emotional benefits standing alone do not rise to the level of value, <u>see</u> <u>Gonzalez</u>, 342 B.R. at 169 (collecting cases), such benefits do constitute value when considered within a broader REV analysis. However, courts have held that subjective pleasure and satisfaction associated with the following situations, among others, can rise to the level of value:

(i) A parent interacting with and providing for a child, even in the absence of any legal obligation to do so, <u>see</u> <u>Gonzalez</u>, 342 B.R. at 172;

(ii) A family following their religious convictions by making a home in a community of other "like-minded persons" with similar "religious interests," <u>In re Missionary Baptist Found. of Am., Inc.</u>, 24 B.R. 973, 979 (Bankr. N.D. Tex. 1982);

(iii) A parent serving "the best interests" of his children by funding a trust for their benefit, even though such trust would continue to benefit the "children" until age 25 — long after all legal support obligations will have lapsed, <u>In re James</u>, 186 B.R. 262, 267 (Bankr. D. Mont. 1995);

(iv) A litigant paying the legal expenses of his co-defendants to provide for a joint defense, <u>see HBE</u>, 48 F.3d at 638-39; and

(v) A debtor's choice to patronize casinos or restaurants, and purchase other non-essential goods and services, <u>see</u> <u>Chomakos</u>, 69 F.3d at 772.

        39.    Of particular relevance to our case is Judge Gropper's opinion in <u>Gonzalez</u> where the bankruptcy trustee sued Wells Fargo Bank for the recovery of transfers made by the

debtor on account of the mortgage on a home owned by the debtor's former romantic partner, and occupied by her and the debtor's alleged son. Gonzalez, 342 B.R. at 167-68. The debtor spent weekends at the mortgaged home in order to spend time with his son. 342 B.R. at 167-68. In addition to regular mortgage payments, the debtor contributed to household expenses, childcare, and school tuition for the benefit of his son. 342 B.R. at 167-68. Critically, however, the debtor in Gonzalez had no legal obligation whatsoever to provide for such costs or any other pecuniary needs of his son.[5]  342 B.R. at 167. The trustee argued that because these expenditures satisfied no legal obligations, the debtor could not have received REV for his those accommodations. 342 B.R. at 169.

40.      Not persuaded, Judge Gropper found that "psychic" and other intangible benefits did indeed constitute value received by the debtor.[6] See Gonzalez, 342 B.R. at 172-73 & 173 n.7. The debtor also received a cognizable indirect economic benefit (Minn. Util., 110 B.R. at 420 (citing Rubin, 661 F.2d at 991)) by avoiding lodging costs while visiting, and that benefit was "fairly concrete" (Minn. Util., 110 B.R. at 420 (collecting cases)) and therefore constituted value. See Gonzalez, 342 B.R. at 173 & n.7.

41.      Applied to our case, the principles articulated in Gonzalez strongly suggest that the Debtors received value in consideration of their tuition payments. Similar to the debtor in Gonzalez, the Debtors (i) voluntarily contributed funds for the benefit of their minor children based upon a personal sense of moral obligation;[7] (ii) received a concrete benefit, consisting of the satisfaction of education-related legal obligations, which therefore constituted

---

[5] At the time the couple's son was born, his mother was separated from, but still legally married to, another individual. The State of New York abides a strong presumption that a child born to a married woman is her husband's son. Thus, although the debtor openly acknowledged the boy as his own, he was neither subject to a support order nor otherwise obligated to contribute financially to the child's welfare. 342 B.R. at 167-68, 171.

[6] Judge Gropper determined not only that threshold value was present, but also that REV was present. As this Motion does not directly argue REV, the argument focuses on threshold value.

[7] Although specific dollar amounts are not relevant to threshold value, it should be noted that the amount in controversy in this case is, at the most, approximately 50% less than that in Gonzalez.

value; and (iii) derived substantial psychological ("psychic") and emotional benefits, including abiding their religious convictions.

42.    Significantly, the Second Circuit has held in another case that parents receive a clear and direct benefit from the education provided to their minor children.  See Winters v. Commission of Internal Revenue, 468 F.2d 778 (2d Cir. 1972).  There, the parents of minor children attempted to classify payments to their children's private religious school as tax deductible charitable contributions on the basis– that the taxpayers personally received nothing in return for the payments.  Winters, 468 F.2d at 780.  The Second Circuit rejected the parents' argument, finding instead that "tuition payments are not deductible because the donor expects, and in fact receives, a definite economic benefit" for the payments.  Id. (emphasis added).

43.    In light of the foregoing, one cannot credibly suggest that the Debtors did not receive REV for the Tuition Payments, much less that the value received by the Debtors "startle[s] a correct mind, or shock[s] the moral sense," Gonzalez, 342 B.R. at 173 (citing In re Dondi, 119 B.R. at 109).

### E. Determinations of REV Require a Means of Recovering Transfers for Which the Debtor Received Insufficient Value, Not a Means to Undo Transactions that one may Believe to be Improvident

44.    HBE Leasing, also discussed above, is illustrative of certain inherent problems with hindsight-based valuation models.  Attempting to quantify value for purposes of a formulaic REV analysis can not only be difficult, but may also impinge on a consumer's discretion in fulfilling essential obligations.

45.    The HBE court found that although the debtor did "receive a benefit from the funds it laid out on behalf of the other parties, [] it paid far too high a price for that benefit." HBE, 48 F.3d at 638 (quoting District Court decision below, 837 F. Supp. 57, 63 (S.D.N.Y. 1993)).  But while hindsight might invite condemnation of the "wisdom" of past expenditures,

individual defendants may choose to pay as much to their attorneys for their defense as they consider worthwhile, as long as the payments fall within a fair range of reasonable compensation for <u>bona fide</u> legal services or are reimbursement for legitimate expenses incurred during the defense.

48 F.3d at 639.

46.    In the later case of <u>In re Churchill Mortgage Inv. Corp.</u>, the court expressed a similar sentiment as follows:

> Often, a debtor prior to bankruptcy will make improvident purchases or expenditures which have a detrimental effect on creditors and may even be the precipitating cause of bankruptcy. A spendthrift debtor may purchase clothes or a new car, take costly vacations on credit, or otherwise incur unpayable debts for goods or services. The fact that all these transactions may be said to "exacerbate the harm to creditors and diminish the debtor's estate" from an overall perspective does not mean that the debtor received less than reasonably equivalent value in respect of each particular transaction.

<u>In re Churchill Mortgage Inv. Corp</u>, 256 B.R. 664 (Bankr. S.D.N.Y. 2000) (Hardin, Jr., J.) <u>aff'd</u> <u>sub nom.</u> <u>Balaber-Strauss v. Lawrence</u>, 264 B.R. 303 (S.D.N.Y. 2001).

47.    Taken together, these cases stand for the proposition that consumers are rightfully entitled to exercise discretion, within reason, in providing for the needs of themselves and their families.  Courts are not in the business of using hindsight to "recalibrate" debtors' decision-making processes; the "reasonableness" of a past decision cannot be decoupled from the attendant circumstances.  <u>See</u> <u>Matter of Fairchild Aircraft Corp.</u>, 6 F.3d 1119, 1126 & 1126 n.8 (5th Cir. 1993) (citing <u>In Re Morris Communications NC, Inc.</u>, 914 F.2d 458, 466 (4th Cir.1990)).

48.    As a matter of custom, practice, and policy, courts generally have not and should not pursue good-faith parties to transactions with debtors.  <u>See</u>, <u>e.g.</u>:

(i) <u>In re Young</u>, 82 F.3d 1407 (no liability against church);

(ii) <u>In re Missionary Baptist Found. of Am., Inc.</u>, 24 B.R. 973 (no liability against religious charity);

(iii) <u>In re Chomakos,</u> 69 F.3d at 772, <u>and</u> <u>In re Chomakos</u> (lower court opinion), 170 B.R. at 595 (suggesting no liability against casinos, restaurants, luxury hotels, or other providers of entertainment value and/or "non-essential" goods and services);

(iv) <u>In re Gonzalez</u>, 342 B.R. 165 (no liability against mortgage lender);

(v) <u>HBE Leasing Corp.</u>, 48 F.3d 623, 637 (no liability against attorneys); <u>HBE Leasing Corp.</u> (District Court Decision Below), 837 F. Supp. 57, 63 (expressing overriding policy concern not to burden trial lawyers or deprive litigants of right to counsel; "To accept the [] argument that anyone who is sued for more than he has cannot hire attorneys to defend the claim, because it is potentially the judgment creditors' money he is spending, would be to deprive defendants [] of counsel."); and

(vi) <u>In re R.M.L., Inc.</u>, 92 F.3d 139 (no liability against bank providing commercial financing).

49.    Based upon the foregoing, this Court should find that as a matter of law, the Debtors received REV for the Tuition Payments and that accordingly, the Complaint should be dismissed.

### III. The Unjust Enrichment Claim Must be Dismissed – Claim No. 3

50.    The Trustee's third claim appears to be a mere throw in that requires little discussion.  The court <u>In re Rezulin Products Liab. Litig.</u> opinion aptly explained the doctrine of unjust enrichment as applied in the State of New York:

> "The essence of unjust enrichment is that one party has received money or a benefit at the expense of another which, in good conscience, ought to be returned." <u>Carriafielio-Diehl & Assocs., Inc. v. D & M Elec. Contracting, Inc.</u>, 784 N.Y.S.2d 617, 618 (2d Dep't 2004); <u>accord</u> <u>Citibank, N.A. v. Walker</u>, 787 N.Y.S.2d 48, 49 (2d Dep't 2004) (citing <u>Paramount Film Distrib. Corp. v. State of N.Y.</u>, 334 N.Y.S.2d 388, 393 (1972)) (citing, among other authorities, the [RESTATEMENT (FIRST) OF RESTITUTION] for the proposition that "[t]he essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered[.]").

<u>In re Rezulin Products Liab. Litig.</u>, 390 F. Supp. 2d 319, 340 (S.D.N.Y. 2005).

51.    In order to recover for unjust enrichment under New York law, a plaintiff must show that (1) defendant was enriched, (2) enrichment was at plaintiff's expense, and (3) the circumstances were such that equity and good conscience require defendant to make restitution. Violette v. Armonk Associates, L.P., 872 F. Supp. 1279, 1282 (S.D.N.Y. 1995).   Unjust enrichment is a quasi-contractual remedy, and its elements cannot be removed "from the context in which they must be viewed: as an alternative to contract, where a contractual relationship legally failed."  Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC, 317 F. Supp. 2d 301, 333-34 (S.D.N.Y. 2003) (dismissing unjust-enrichment claims where the plaintiffs failed to allege any contractual or quasi-contractual relationship with defendants).

52.    No allegation is made by the Trustee in the Complaint that through the Tuition Payments, Xaverian received more than its standard student tuition for the years in question.[8]  Also, since unjust enrichment is a quasi-contract theory, it necessarily requires a demonstration that there was no traditional tuition payment contract between Xaverian and the Debtors, which the Trustee has not alleged.  Under such circumstances, it cannot stand to reason that Xaverian was enriched by the Tuition Payments at the expense of the Debtors (now through the Trustee). Moreover, equity and good conscience all point toward Xaverian retaining the Tuition Payments for which they provided value to the Debtors (and their son).

53.    For all of the same reasons that the Trustee cannot show that the Debtors received REV for the Tuition Payments, the Trustee cannot demonstrate that Xaverian was unjustly enriched as a result of the Tuition Payments.

---

[8] Indeed, as the Debtors' son was the recipient of a partial scholarship, the Tuition Payments paid to Xaverian by the Debtors were actually far less than the standard value paid for a similar education at Xaverian.

## NOTICE

54.    Notice of this Motion and the hearing thereon will be given to Trustee's counsel and all other parties entitled to receive electronic notice in this adversary proceeding.  At the time this Motion is being filed, counsel to Xaverian and the Trustee have already tentatively negotiated a briefing schedule that will be subject to the Court's approval.

## NO PRIOR RELIEF

55.    No prior application for the relief sought herein has been made to this or any other court.

WHEREFORE, Xaverian respectfully requests that (i) the Motion be granted, (ii) the Complaint be dismissed with prejudice, and (iii) the Court grant such other and further relief as is just.

Dated:   New York, New York
         May 28, 2013

                                        KLESTADT & WINTERS, LLP

                              By:    /s/ Fred Stevens
                                     Fred Stevens
                                     Sean C. Southard
                                     Thomas Szaniawski
                                     Maeghan J. McLoughlin
                                     570 Seventh Ave., 17th Floor
                                     New York, New York 10018
                                     Tel: (212) 972-3000
                                     Fax: (212) 972-2245
                                     Email: fstevens@klestadt.com

                                     *Counsel to Defendant Xaverian High School*