UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
In re:                                                            Chapter 7

OLANIYI L. AKANMU and OMOLAYO T.
SUARA,
                                                                  Case No. 11-43773 (CEC)
                                    Debtor.
-----------------------------------------------------------------------X
ROBERT L. GELTZER, as Chapter 7 Trustee
of the Estate of OLANIYI L. AKANMU AND
OMOLAYO T. SUARA,

                                    Plaintiff(s),                 Adv. Proc. No. 13-01105

              -against-

XAVERIAN HIGH SCHOOL,

                                    Defendant.
-----------------------------------------------------------------------X

## PLAINTIFF'S OPPOSITION TO DEFENDANT
## OUR LADY OF XAVERIAN HIGH SCHOOL'S
## MOTION TO DISMISS

Daniel Gershburg, being duly sworn deposes and says:

As Special Counsel for ROBERT L. GELTZER, ESQ., the trustee (the "Trustee") for the

Estate of Olaniyi L. Akanmu and Omolayo T. Suara (the "Debtors"), I hereby submit this

Opposition in response to XAVERIAN HIGH SCHOOL's (the "Defendant") Motion for an order,

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissing the Complaint[1].

---

[1] There is a contemporaneous action to this proceeding involving the same Debtors, to wit: <u>Geltzer v. Our Lady of Mt. Carmel-St. Benedicta School</u>, Adv. Pro. No. 13-1107, wherein the Motion to Dismiss the Complaint and Adversarial Action has been filed by Kelley Drye & Warren LLP on behalf of Defendant Our Lady.  As the arguments made by Defendants in both proceedings are substantially the same, Plaintiff respectfully submits this Opposition in response to both Defendants' (Xaverian High School and Our Lady of Mt. Carmel-St. Benedicta School) Motions to Dismiss.`

## PRELIMINARY STATEMENT

1. The Trustee commenced this action in furtherance of his duties to achieve the most equitable resolution of the Debtors' insolvent estate by avoiding transfers made in the form of tuition payments for their child in blithe disregard of their own insolvency.

2. The Trustee unequivocally rejects Defendant's efforts to misconstrue these proceedings as an attempt to use the Bankruptcy Code as a basis to interfere with the parent-child relationship.

3. This action was commenced based upon the Trustee's good faith assessment that the Debtors received less than a reasonably equivalent value in exchange for their child's tuition.  As set forth herein, the Trustee's argument is based on the fact that the Debtors were not the direct beneficiaries of said tuition payments and that private schooling of the  Debtors' child was not reasonably necessary.

4. Rather than a bright line rule governing the qualitative merits of **any** debtor's educational expenses, the Trustee respectfully requests a determination (facilitated through discovery) based upon the **totality of the circumstances** presented to the debtor at the time the expenses were incurred.

5. Additionally, defendant's specious contention that if the Debtors received no consideration for tuition payments then *ipso facto* the transfers must be characterized as charitable contributions under the Bankruptcy Code must fail as a matter of law.

## STATEMENT OF FACTS

6. Plaintiff relies upon the facts as more fully set forth in his Complaint.

## STANDARD OF REVIEW

7.  In considering a motion to dismiss a complaint pursuant to Fed. R. Civ. P. §12(b)(6), the court takes all of plaintiff's factual allegations as true and should dismiss the action only where no set of facts could support plaintiff's claims.  *International Audiotext Network v. American Tel. & Tel. Co.*, 62 F.3d 69, 71-72 (2d Cir., 1995).  The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.  *Id.*

## ARGUMENT

I.    **The Bankruptcy Code Does Not Bar Examination of a Debtor's Educational Expenses.**

8.    As a threshold matter, Defendant's arguments suggest that the duty to provide for one's child can be fashioned both as a sword and a shield with respect to one's creditors, to wit: even a parent beset by financial insolvency must provide for his children, therefore, the probity of said provisions must be assumed and exempt from examination.  It is respectfully submitted that the Bankruptcy Code provides no such bright line assumption or exemption.

9.    Defendant's argument that a debtor's expenses for her child's education are somehow beyond the pale of examination is not legally supportable.  Indeed, the First Circuit Bankruptcy Appellate Panel has dealt squarely with this issue.  *See In re Watson*, 309 B.R. 652, 661 (B.A.P. 1st Cir. 2004).    In *Watson*, the court was similarly presented with an insolvent debtor's expenses for a child's private schooling.  Notwithstanding Defendant's parsing of the *Watson* decision to proffer an argument that debtors themselves receive educational services for tuition payments made on behalf of children, the Panel, in affirming the bankruptcy court's denial of the *Watson* private school tuition payments, clearly holds that "when considering the circumstances of the private schooling, bankruptcy courts have examined the reason for the private schooling, examining the adequacy of the public school alternative as a general matter and with respect to the particular needs of the student in question.  *Id*.    Moreover, the court, citing to *In re Webb*, 262 B.R. 685 (Bankr. E.D. Tex. 2001), noted that mere

preference for private schooling is not sufficient. *Id*. (private school education is reasonably necessary only where a "compelling circumstance" exists).

**II.    Defendant Has Not Proffered Any Evidence that the Debtors Received the Benefit of Religious Faith Formation in Exchange for Tuition Payments.**

10. Notwithstanding the Defendant's historical and admirable traditions, the plain fact is, the record, at this nascent stage of the action, is wholly devoid of any evidence that the Debtor's received the benefit of religious formation because of payments made in furtherance of their children's parochial school education.  We simply do not know, nor has Defendant proffered any elucidating facts.

11. It is well-settled that parents' responsibilities for religious education takes place primarily in the home; choosing a religious school is a parent's right but not an absolute duty. *See Strout v. Albanese*, 178 F.3d at 65 (citing Catechism of the Catholic Church at 537-38).  *See also, Watson*, 309 B.R. 652.  Even assuming, *arguendo*, that Defendant's parochial instruction inured to the Debtor's children, there is absolutely no such evidence that the Debtors were similarly benefited—directly or intangibly.  At this preliminary juncture, the record is deficient regarding this proof; the Defendants do not proffer anything.

**III.    The Debtors Did Not Receive Reasonable Equivalent Value In Exchange for Their Children's Tuition Payments.**

12. It is respectfully submitted that Defendant's reliance upon *In re Gonzalez* is misplaced. *See* 342 B.R. 165 (Bankr. S.D.N.Y. 2006).  As an initial matter, the debtor in *Gonzalez* is distinguishable from the debtors in the instant matter because Gonzalez's purported fraudulent transfers were mortgage payments for a property at which Gonzalez himself resided.  *Id.*  In the instant matter, the Debtors did not attend the Defendant's school.

13. Regarding the issue of constructive fraudulent transfer avoidance, the *Gonzalez* court discusses the standard set forth by 11 U.S.C.A. §548(a)(1)(B):

> To determine whether value that debtor received in exchange for challenged transfer was "reasonably equivalent" to what debtor gave up…courts conduct a 'totality of the circumstances' inquiry that considers three factors: (1) fair market value **of economic benefit received by debtor**; (2) arms-length nature of transaction; and (3) good faith of transferee.

> *Gonzalez,* 342 B.R. at 173 (emphasis added).

14. When considering tuition payments made by the Debtors on behalf of their child the fair market value of the economic benefit to debtors as contemplated by the *Gonzalez* court is arguably entirely speculative in nature. There is simply to means to determine, without caveat, whether the Debtors will actually ever benefit from the expenses paid to the Defendant. However, Plaintiff has a good faith belief that it can meet its burden to demonstrate that the Debtors have not received an economic benefit from the tuition payments.

15. While the *Gonzalez* decision makes clear that "purely emotional benefits, such as love and affection, are generally not considered value for purposes of §548," the court recognizes that a debtor can accrue intangible benefits for payments he makes on behalf of a child. *Id*. at 169-172. However, Defendant's efforts to analogize to the instant matter strain credulity in the absence of discovery that might enable the Trustee to determine if the Debtor's received "psychic" benefit for payments for their children's **private religious education**. The Trustee cannot deduce Defendant's conclusion because the record is deficient.

16. Defendant's argument regarding the psychic benefit that result from tuition payments made by a parent on behalf of a child is similar to an argument rejected by the court in *In re Leonard*, 454 B.R. 444 (Bankr. E.D. Mich. 2011). The *Leonard* debtors argued

that they received such intangible benefits in exchange for tuition payments made for their child. The court held that the child received the direct benefit and that any benefit to the parent was indirect. Moreover, the court relied upon the Indirect Benefit Rule, which holds that "an indirect benefit to the debtor from a transfer is not considered 'value,' and therefore cannot be 'reasonably equivalent value,' unless it is (1) an 'economic' benefit; (2) concrete; and (3) quantifiable." *Id*. at 457

17. It is respectfully submitted that the Trustee is entitled to further discovery to demonstrate that the purported benefits argued by the Defendant are neither concrete nor quantifiable—irrespective of how the "benefit" is characterized.

**IV.    The Bankruptcy Code Expressly Excludes Tuition Payments As Charitable Contributions.**

18.  Defendant contends that regardless of the Court's decision on the issue of whether Debtor receives a benefit, the tuition payments must be considered "charitable contributions" and therefore be exempt. However, this contention is not supported by case law and must be denied as a matter of law.

19. In *In re Watson*, the Appellate Panel found that tuition payments made to a private religious school were not reasonably necessary expenses in spite of the family's demonstrated preference based on religious beliefs. It was further concluded that the tuition payments did not constitute a "charitable contribution" under the Charitable Donation Protection Act of 1998 or the Religious Freedoms Restoration Act or Religious Freedom Restoration Act.  *See Watson,* 309 B.R. at 662.

20. Moreover, in *In re Kirschner*, the court held that charitable contributions are clearly distinguishable from private religious school tuition payments.  259 B.R. 416, 422 (Bankr. M.D.Fla. 2001).  The Court explicitly found that,

"While §1325(b)(2)(A) protects the rights of debtors to continue making religious and charitable contributions after they file for bankruptcy relief, such **protection does not extend to private religious school tuition payments**."

*See, Kirschner, 259 B.R. at 422-23 (emphasis added).*

21. Defendant cannot create such protection where Congress has not. Thus, Defendant cannot establish that the Trustee's claim to transfers made for private religious school tuition payments must be dismissed as a matter of law.

## **CONCLUSION**

Based on the foregoing, Defendant has failed to demonstrate that it is entitled to a order dismissing the Trustee's claims, and it is respectfully requested that Defendant's motion be denied in its entirety.

Respectfully submitted,

_____/s/_____
Daniel Gershburg, Esq.
Daniel Gershburg Esq., P.C.
55 Broad Street, Suite 18B
New York, NY 10004
T. 212.390.8866

Of Counsel:
Joyce D. Priveterre, Esq.