**KLESTADT & WINTERS, LLP**
570 Seventh Avenue, 17th Floor
New York, NY 10018
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Fred Stevens
Sean C. Southard
Maeghan J. McLoughlin

*Counsel to Defendant Xaverian High School*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x
| | |
|---|---|
| In re : | |
| : | Chapter 7 |
| OLANIYI L. AKANMU and OMOLAYO T. : | |
| SUARA, : | Case No. 11-43773 (CEC) |
| : | |
| Debtors. : | |
------------------------------------------------------------x
| | |
|---|---|
| ROBERT L. GELTZER, as Chapter 7 Trustee : | |
| of the Estate of Olaniyi L. Akanmu and : | |
| Omolayo T. Suara, : | |
| : | |
| Plaintiff, : | |
| : | |
| -against- : | Adv. Pro. No. 13-01105 |
| : | |
| XAVERIAN HIGH SCHOOL, : | |
| : | |
| Defendant. : | |
------------------------------------------------------------x

**REPLY OF DEFENDANT XAVERIAN HIGH SCHOOL TO THE
PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION FOR AN
ORDER, PURSUANT TO FED. R. CIV. P. 12(b)(6), MADE APPLICABLE
TO THIS PROCEEDING BY FED. R. BANKR. P. 7012, DISMISSING THE
<u>COMPLAINT AND ADVERSARY PROCEEDING WITH PREJUDICE</u>**

**TO THE HONORABLE CARLA E. CRAIG,
CHIEF UNITED STATES BANKRUPTCY JUDGE:**

Xaverian High School, the defendant in the above-captioned adversary proceeding ("<u>Xaverian</u>" or the "<u>Defendant</u>"), by its attorneys, Klestadt & Winters, LLP, as and

for its reply (the "Reply") to the objection (the "Objection") of Robert L. Geltzer (the "Trustee" or "Plaintiff"), as chapter 7 trustee of the Estate of Olaniyi L. Akanmu and Omolayo T. Suara (collectively, the "Debtors"), to the Defendant's motion (the "Motion"), for an order, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedures (the "Rules"), made applicable to this proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), dismissing the complaint, dated March 22, 2013 (the "Complaint") [Docket No. 1], respectfully sets forth and alleges as follows:

## PRELIMINARY STATEMENT

1. In the Objection, the Trustee asks this Court to deny the Motion and allow him to conduct discovery, develop the factual record, and present his case that the Debtors received less than reasonably equivalent value in exchange for the approximately $20,000 in tuition paid to Xaverian for the high school education of the Debtors' minor child. As argued at length in the Motion, this case can and should be disposed of now because the claims as asserted in the Complaint are facially defective. Allowing a bankruptcy trustee to pry into and examine a debtor's legitimate expenditures on behalf of her minor children for things as sacrosanct as food, shelter, medical care and education, is unnecessary, inappropriate and not legally supportable.

2. First, the Trustee improperly confuses what is reasonably equivalent value in connection with a pre-petition transaction, with what is a reasonably necessary forward-looking expenditure for purposes of confirming a chapter 13 plan. The two concepts have nothing to do with each other and the Trustee's suggestion otherwise is unsupported by any authority.

3. Second, the Trustee argues that "the record, at this nascent stage of the action, is wholly devoid of any evidence that the Debtors received the benefit of religious formation because of payments made in furtherance of their children's parochial school

2

education." Objection, ¶10. While the statement is true, it has nothing to do with the Motion or the relief requested by Xaverian. Xaverian cannot understand the inclusion of this argument in the Objection and is unable to respond directly.

4. Third, the Trustee accuses Xaverian of asserting a "specious" argument that the tuition payments at issue should be exempt charitable contributions. Objection, ¶¶5, 18-21. However, Xaverian never made that argument in its Motion.

5. Fourth, the Trustee mistakenly relies on the *Leonard* decision in support of his case.[1] However, *Leonard* is easily distinguishable. In *Leonard*, the trustee was attacking college tuition payments made on behalf of the debtors' adult child. This is very different from a debtor/parent paying for the educational expenses of her minor child, which is the case here. Among other things, parents have a legal obligation to care for their minor children, but do not typically have any legal obligation to care for their adult children. Also, a parent has legal control, decision making ability and discretion over where her minor child receives education, but has no legal control or decision making ability over whether or where her adult child receives education.

6. Fifth, the Trustee dismisses Xaverian's reliance on Judge Gropper's decision in *Gonzalez* because the facts are not identical.[2] However, the decision in *Gonzalez* is both relevant and instructive. Also, Xaverian's failings in finding a case completely analogous to the instant case are owed entirely to the fact that to the best of the undersigned's knowledge, no trustee has ever before asserted the novel and flawed theory of recovery asserted by the Trustee here.

---

[1] 454 B.R. 444 (Bankr. E.D. Mich. 2011).
[2] 342 B.R. 165 (Bankr. S.D.N.Y. 2006).

7. Xaverian addresses the foregoing arguments raised in the Trustee's Objection in order below. For all the reasons stated in the Motion and this Reply, Xaverian respectfully requests that the Complaint be dismissed with prejudice.

## BACKGROUND

8. For relevant factual background, Xaverian respectfully refers this Court to the "Background" section of its Motion, and to the allegations in the Complaint which must be accepted as true for purposes of deciding the Motion. Bolt Elec. Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995). All capitalized terms used herein shall have the same meanings ascribed to them in the Motion unless otherwise defined.

## REPLY

### I. The Trustee Improperly Confuses What is a Reasonably Necessary Expense for Purposes of Confirming a Chapter 13 Plan with What is Reasonably Equivalent Value for Purposes of Avoiding a Fraudulent Conveyance

9. The Trustee cites In re Watson, 309 B.R. 652, 661 (B.A.P. 1st Cir. 2004) and In re Webb, 262 B.R. 685 (Bankr. E.D. Tex. 2001) for the proposition that the "Defendant's argument that a debtor's expenses for her child's education are somehow beyond the pale of examination is not legally supportable." Objection, ¶9. The Trustee's reliance on this case is misplaced.

10. To start, Xaverian does not suggest that a Trustee is prohibited from examining educational expenses for a debtor's minor child in the context of avoiding a fraudulent conveyance. If, for example, the Trustee alleged that the Debtors did not receive REV[3] in exchange for the Tuition Payments because Xaverian gave the Debtors' son a sub-par education, the action would be facially sustainable. Also, if the Trustee alleged that the Debtors

---

[3] As in the Motion, the capitalized term "REV" is defined as reasonably equivalent value and fair consideration as those terms are used in the Bankruptcy Code and New York Debtor and Creditor Law.

4

made the Tuition Payments as part of an effort to intentionally defraud present or future creditors by ridding themselves of assets, then the action would be facially sustainable (although probably subject to a good faith defense). However, the Trustee asserts that the Debtors did not receive REV for the Tuition Payments because their minor son received the benefit of the payments and the Debtors received nothing but perhaps an indirect benefit. In so concluding, the Trustee ignores the fact that the Debtors received a direct benefit in the form of satisfaction of a legal obligation to care for and educate their minor child.[4]

        11.     The Trustee's attempt to analogize a bankruptcy court's decision that tuition payments for minor children are not "reasonably necessary" in the context of a chapter 13 plan, with whether a debtor receives value on account of such tuition payments, is wrongheaded at best and disingenuous at worst. The two concepts are completely different. There are many things that have been considered by bankruptcy courts not to be "reasonably necessary" for purposes of confirming a chapter 13 plan, including $10.75 per month for a "Omaha World-Herald/Newspaper Subscription,"[5] $472.00 per month for a brand new "Chevrolet Blazer,"[6] $88.00 per month for the purchase of "IBM stock,"[7] $48.00 per month for a health club membership,[8] and $151.00 for "restaurant expenses."[9] However, no bankruptcy court, at least to Xaverian's knowledge, has ever sanctioned fraudulent conveyance suits against newspapers, car

---

[4] The Trustee seeks to avoid the Tuition Payments themselves, but does not address whether the Debtors were legally obligated to make the Tuition Payments when they enrolled their son. Because the existence of an actual debtor-creditor relationship between the Debtors and Xaverian is not raised in the Complaint, Xaverian does not raise the factual issue in the Motion. However, if there was a debtor-creditor relationship, the Trustee's case fails because the Tuition Payments satisfy an antecedent debt of the Debtors, which is *per se* REV. See 11 U.S.C. § 548(d)(2)(A) ("value" includes "securing of a present or antecedent debt of the debtor"); In re AppliedTheory Corp., 330 B.R. 362, 364 (S.D.N.Y. 2005). Of course, the Trustee could amend his pleading to avoid any relevant agreement or contract along with the Tuition Payments, which would take the inquiry right back to the issues raised in the Motion. Rather than go through the exercise, Xaverian has chosen to tackle the primary issue head-on here.
[5] Matter of Anderson, 143 B.R. 719, 720-721 (Bankr. D. Neb. 1992).
[6] In re Reyes, 106 B.R. 155, 157-158 (Bankr. N.D. Ill. 1989).
[7] In re Festner, 54 B.R. 532 (Bankr. E.D.N.C. 1985).
[8] In re Kitson, 65 B.R. 615, 621 (Bankr. E.D.N.C. 1986).
[9] In re Gillead, 171 B.R. 886, 891 (Bankr. E.D.C.A. 1994).

dealers, publically traded companies, health clubs or restaurants, on the theory that debtors received no value when they bought newspapers, cars, stock, health club memberships or food. Indeed, a debtor can receive value in a transaction that is not reasonably necessary.

12. Further, the bankruptcy court in *Watson* provided constructive commentary with respect to the REV issue in deciding that private school tuition payments were not "reasonably necessary" in connection with the debtors' chapter 13 plan. In *Watson*, the debtors argued that their tuition payments on account of their minor child's private school education were protected gifts to religious institutions, and thus, could not be questioned by the bankruptcy court. The *Watson* court did not accept the argument and reasoned as follows:

> Here, however, the [debtors] are not making a gift for which they receive nothing in return. To state the obvious, [the debtors] receive educational services in return for their tuition payments. Indeed, as [the debtor] testified, the [debtors] and their children highly value the education received in return for their tuition payments. As such, the $735 monthly expense for the private schooling of the [debtors'] two children is not a "charitable contribution" and is therefor not protected as a *de facto* reasonably necessary expenses under § 1325(b)(2)(A).

In re Watson, 309 B.R. at 662. This language directly supports Xaverian's contention that the Debtors received value in exchange for the Tuition Payments.

13. The analysis of whether a debtor receives REV for purposes of avoiding a constructive fraudulent conveyance under sections 544 or 548 of the Bankruptcy Code, and/or sections 271 *et seq.* of the New York Debtor and Creditor Law, has no relation to whether an expense is "reasonably necessary" for purposes of confirming a plan under section 1325 of the Bankruptcy Code. No authority cited by the Trustee or reviewed by Xaverian even suggests that the two concepts are interchangeable. Accordingly, the Trustee's use of these decisions to support the claims at issue should be disregarded.

## II. Xaverian Does Not Argue for Purposes of the Motion that the Debtors Received the Benefit of Religious Faith Formation in Exchange for Tuition Payments

14. At page 5 of the Objection, the Trustee makes an issue of the fact that Xaverian did not allege that the Debtors received the benefit of religious faith formation in exchange for the Tuition Payments. While the Trustee's statement is true, the Trustee ignores that Xaverian is not permitted to allege new facts in the context of a motion to dismiss. Xaverian must accept as true all allegations in the Complaint, and form its arguments in favor of dismissal from there. It is unclear to Xaverian how, why or whether, it should be raising fact-based defenses in the context of a motion to dismiss, or why the Trustee would think this necessary.

15. Xaverian dismisses this argument at this stage, and expressly reserves its right to assert any and all defenses in the event the Complaint is not disposed of on the Motion.[10]

## III. The Trustee Incorrectly Interprets Xaverian's Arguments

16. At paragraph 18 of the Objection, the Trustee states that "Defendant contends that regardless of the Court's decision on the issue of whether Debtor receives a benefit, the tuition payments must be considered 'charitable contributions' and therefore be exempt." However, Xaverian never made any such contention in its Motion. It is unclear to Xaverian why the Trustee includes this argument, what he is trying to address, or what he misinterpreted in the Motion to think that Xaverian advanced this argument.

## IV. The Trustee's Reliance on the Leonard Decision is Misplaced

17. In <u>In re Leonard</u>, 454 B.R. 444, 454-459 (Bankr. E.D. Mich. 2011), the bankruptcy court concluded that the debtors did not receive REV in exchange for paying their adult child's college tuition at Marquette University. Based upon the date of the *Leonard* decision, Xaverian assumes that this decision was the impetus for the Trustee's new interest in

---

[10] Among other things, Xaverian questions whether the Debtors were insolvent during the entire period covered by the Complaint. However, these fact-based arguments have no place in the context of a motion to dismiss.

7

asserting these novel claims against parochial schools. Regardless, the Trustee's reliance on *Leonard* is misplaced.

18.     Among other things, the *Leonard* debtors' child was an adult, whereas the Debtors' child was a minor during all relevant periods. In reaching its decision, the *Leonard* court stated:

> But Marquette does not argue, and cannot demonstrate, that [d]ebtors had or would have any legal obligation to support their adult son, either at the time of the transfers, when [d]ebtors' son was 18 years old, or at any time in the future.
>
> ******
>
> . . . . Marquette does not claim that the [d]ebtors had any legal duty under Michigan law to pay for their adult son's college education. So [d]ebtors' payment of such college tuition did not discharge or satisfy any legal duty on [d]ebtors' part.

Id. at 457.

19.     The entire basis for the *Leonard* court's decision with respect to the question of REV, was the absence of a legal obligation on the part of the debtors to care for their adult child. In the Motion, Xaverian discusses at length the Debtors' legal obligation to care for and educate their minor child. The Trustee does not take issue with any of those contentions, or argue in the Objection that the Debtors were not legally obligated to educate their minor child. Rather, the Trustee relies upon the premise that if the Debtors could have satisfied their legal duty to educate their minor children cheaper, then they did not receive REV in exchange for the Tuition Payments. The Trustee's argument is not supported by any authority and the facts in *Leonard* are patently distinguishable from those here, and in fact, the reasoning in *Leonard* supports Xaverian's arguments.[11]

---

[11] It is also interesting that the debtors in *Leonard* never agreed to pay the Marquette tuition. The *Leonard* court noted that if the Debtors had agreed to pay the tuition, "the [d]ebtors' tuition payments could be deemed 'value' in the form of a direct economic benefit to the Debtors." Id. at 456. As set forth in Footnote 3 above, upon development of a factual record, a legal obligation of the Debtors to make the Tuition Payments to Xaverian may be

8

**V. The Gonzalez Decision is Instructive and the Trustee's Dismissal of it is Improper**

20.     Xaverian does not rely upon Judge Gropper's decision in *Gonzalez* because it has the exact same facts as the instant case. Xaverian relies upon the *Gonzalez* decision because it is the most analogous case available, and because Judge Gropper sheds significant light on the types of claims asserted in this case. The *Gonzalez* facts were similar in the sense that there, the bankruptcy trustee sued a third party recipient of payments made by a debtor for value provided to the debtor's minor child.

21.     A key distinction between the facts in *Gonzalez* and the facts here is that the debtor's paternity had not been established in *Gonzalez*, and thus, the trustee argued that the debtor did not have a legal obligation to support the child. Interestingly, John Pereira, the trustee in *Gonzalez*, knew and admitted that if the child was the debtor's child, he could not avoid the payments at issue. In re Gonzalez, 342 B.R. at 169 ("the [t]rustee does not contend that if [the child] were legally declared to be the [d]ebtor's son, or if the [d]ebtor were obligated by a court order to provide child support, the mortgage payments [made to Wells Fargo on account of a mortgage against the house occupied by the debtor's alleged son and the child's mother] would not be avoidable.") Unlike *Gonzalez,* in this case, there is no question regarding the parentage of the child at issue, or the Debtors' legal obligation to support the child.[12]

22.     One other point of interest in the *Gonzalez* decision that is not discussed in the Motion is that Judge Gropper addressed the prejudice that may result to Wells Fargo if the payments in question were avoided. Judge Gropper noted that "it would unfairly prejudice a party, such as Wells Fargo, that would not even have standing to seek an order of paternity to

---

revealed. If the Debtors had an enforceable legal obligation to pay Xaverian, the *Loenard* decision would support the dismissal of the case on that basis alone.

[12]  It also bears mentioning that the debtor in *Gonzalez* wrote checks directly to "vendors for household expenses, childcare and *school tuition*" for his alleged son, but the trustee in that case never made any issue of these payments. Id. at 167 (emphasis added).

9

force the [d]ebtor to obtain one." Id. at 171. The point that an unfair prejudice could result to the recipient of an alleged fraudulent transfer is an interesting one that should be addressed here.

23. In this case, Xaverian agreed to educate the Debtors' child in exchange for the Tuition Payments. Indeed, minors are not generally permitted to enter into such arrangements or make their own educational decisions in the State of New York. Xaverian, like any not-for-profit institution, is only permitted to use its money to fulfill its educational mission, with absolutely no potential for profit.[13] The notion that tuition payments made by parents to not-for-profit schools like Xaverian can get clawed back on the basis that the parents receive no direct benefit puts schools like Xaverian in an impossible position. If Xaverian cannot look to its students for tuition payments because they are minors, and can look to the parents only if they are legally solvent (whatever that could mean to a school), then it is unclear how or whether Xaverian could protect itself against these types of suits. Schools like Xaverian tirelessly service their students and communities, typically operating on very tight budgets dependent not only upon tuition payments, but also upon additional donations from parents and alumni networks.[14] Schools should be able to rely upon the notion that when parents pay their child's tuition, the school's right to retain that payment is subject only to one thing – providing a quality education to the child.

---

[13] Not only is Xaverian legally prohibited from making a profit, all of its owners also happen to be Xaverian Brothers who have dedicated their lives to God through vows of poverty, chastity and obedience. See http://www.xaverianbrothers.org/content/aboutxb/vocations.cfm.

[14] Xaverian estimates that the cost of educating each of its students is approximately $5,000 more per year than what it charges for tuition. See http://www.xaverian.org/page.cfm?p=476.

24. For all the foregoing reasons, and all those set forth at length in the Motion, Xaverian respectfully requests that the Complaint be dismissed with prejudice.

Dated: New York, New York
July 9, 2013

**KLESTADT & WINTERS, LLP**

By: */s/ Fred Stevens*
Fred Stevens
Sean C. Southard
Maeghan J. McLoughlin
570 Seventh Ave., 17th Floor
New York, New York 10018
Tel: (212) 972-3000
Fax: (212) 972-2245
Email: fstevens@klestadt.com

*Counsel to Defendant Xaverian High School*